**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**MICHAEL A. JACKSON,**

      **Petitioner,**

**vs.**                             **4:09cv131-MP/WCS**

**STATE OF FLORIDA,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DISMISS § 2254 PETITION

Petitioner filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 and supporting memorandum. Docs. 1 and 2. Petitioner challenges four convictions for armed robbery, which resulted in four consecutive life sentences, in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, case numbers 02-1404, 02-1504, 02,-1460, and 02-1573.[1]

The petition was filed on April 7, 2009, the date it was signed and delivered to prison officials for mailing.[2] Attached to the form petition is an in forma pauperis

_____

[1] The Circuit Court cases numbers are available on the docket of Petitioner's direct appeal. Florida First District Court of Appeal docket number 1D02-3478; Jackson v. State, 871 So. 2d 880 (Table) (Fla. 1st DCA 2001).

[2] It is noted that the originals of the § 2254 petition and memorandum were received by the clerk on April 10, 2009. The service copies, also dated April 7, 2009,

application form, but this form was not completed or signed by Petitioner. Doc. 1, pp. 8-9. As Petitioner did not pay the filing fee or submit a motion to proceed in forma pauperis, an order was issued on April 15, 2009, directing him to do so. Doc. 5 (entered on the docket April 16, 2009).

Petitioner sent a letter to the clerk using the name Michael A. Chaires, asking if the court received his petition filed on April 7, 2009, and indicating he had not completed the financial affidavit because he was able to pay the filing fee. Doc. 7. The letter was not dated but was stamped received by the clerk on April 23, 2009. The court determined that Chaires was an alias for Petitioner, and advised he must file all documents using the name Michael A. Jackson. Doc. 8. As it was unclear whether Petitioner had received the previous order,[3] the court treated the letter as seeking additional time to pay the fee, directed the clerk to send another copy of doc. 5 to Petitioner at his only known address, and directed Petitioner to pay the fee by May 29, 2009. *Id.*

Petitioner sent another undated letter to the clerk which was received on June 3, 2009. Doc. 12. He again asked about his petition filed on April 7, 2009, and said he could pay the filing fee. He asked that, if the court did not still have his petition filed in April, to "please notify me so that I can re-file and pay the filing fee before my deadline ends." *Id.*, pp. 1, 2.

---

must have been mailed separately, as they were stamped received by the clerk on April 20, 2009.

[3] Shortly after this order (doc. 8) was entered, a number of documents were returned to the clerk as undeliverable, and the clerk attempted remailing. Doc. 9 (returning doc. 3, notice to pro se from the clerk), docs. 10 and 11 (returns of doc. 5).

This prompted a third order, on June 11, 2009, noting Petitioner's most recent change of address and advising Petitioner that to prosecute his case he must immediately notify the court of future address changes.  Doc. 13 (incorporated herein by reference).  The clerk was directed to send copies of the two previous orders (docs. 5 and 8) and the docket to Petitioner, and Petitioner was directed to pay the filing fee and to show cause why his petition should not be summarily dismissed as untimely.  The fee was received on or about July 1, 2009 (docket entry of July 6, 2009)..

Petitioner filed a response on the issue of timeliness, titled a "Motion to Show Cause in Response to Court Order," dated July 7, 2009.  Doc. 15.

As previously noted by the court, there is a one year limitations period for filing a § 2254 petition, which generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," though later dates may commence the period.  Doc. 13, p. 2 and n. 2, referencing 28 U.S.C. § 2244(d)(1)(A) (other citations omitted).  As the judgment at issue here was affirmed on April 27, 2004, and Petitioner did not seek rehearing or file a petition for writ of certiorari, his conviction "became final" for § 2244(d)(1)(A) purposes on July 26, 2004.  *Id.*, p. 3 and n. 3, *citing* Jackson v. State, 871 So. 2d 880 (Table) (Fla. 1st DCA 2001) and Fla. 1st DCA No. 1D02-3478; also noting the docket was available online. Petitioner does not challenge this determination.

On April 11, 2005, some 259 days after the judgment had become final, Petitioner filed a Fla.R.Crim.P. 3.850 motion which tolled what was left of the one year under § 2244(d)(2).  *Id.*  The trial court denied the Rule 3.850 motion, the appellate court affirmed, and the mandate issued on May 13, 2008; the period was tolled until the

mandate issued.  Doc. 13, p. 3 and n. 5, *citing* <u>Jackson v. State</u>, 980 So. 2d 493 (Table) (Fla. 1st DCA April 25, 2008) and Fla. 1st DCA Case No. 1D06-5295 (other citations omitted).

Petitioner does not disagree that 259 days elapsed before the Rule 3.850 motion was filed, but claims this left him 66 days to timely file a § 2254 petition after the Rule 3.850 mandate, that he would have filed within the 66 days but for "unfortunate circumstance[s] in which were beyond his control," and he "has tried diligently to File his Petition in a timely manner."  Doc. 15, p. 5.  Actually, one year minus the days already elapsed left Petitioner with 106 (not 66) days remaining to the period after the mandate issued on May 13, 2008.  The one year expired on or about August 27, 2008.

Petitioner alleges the following circumstances beyond his control.  That on May 19, 2008, he received a letter from the Assistant Public Defender "notifying him that his appeal had been denied by the First District Court of Appeal and that there was Nothing else that the public defender[']s office could do in his case.  The letter also contain[ed] the date that the appeal was allegedly denied."  *Id.*, p. 1.  Petitioner was in confinement at Dade Correctional Institution at the time, awaiting transfer.  *Id.*  He claims he submitted an inmate request to the law library for a Florida Law Weekly Index for the week of April 25, 2008 (the date of the appellate court's decision), "hoping" there was a written opinion on appeal, but before his library request could be answered he was transferred.  *Id.*, p. 2.  He asserts that he was forced to get on the transfer bus without his legal documents, which included the trial transcripts, "his copy of his 3.850 and the motions filed to the First District Court."  *Id.*  He was told the property would be sent to

him.  The transfer, from Dade Correctional Institution to South Florida Reception Center,

occurred on May 30, 2008.  *Id.*

Petitioner alleges that "[a] Few days later he was transferred to Lake Butler.

Several days later Petitioner was transferred to Florida State Prison," and that all during

this time he did not have access to his legal materials.  *Id.*  Petitioner alleges that he

submitted informal and formal grievances at Florida State Prison trying to obtain his

legal documents, and his grandmother called Dade Correctional to ask why his property

had not been sent.  *Id.*

Petitioner then alleges that "[m]onths later Dade C.I. sent Petitioner's legal

documents."  *Id.*  He does not specify the date of receipt or even the number of months

after his transfer.  Petitioner states that when he received the documents he filed a

motion for belated appeal, explaining to the appellate court "that due to circumstance

beyond his control he was unable to file an appeal of His appeal that Had been denied

in that Court."  *Id.*

"Very shortly after filing" his motion for belated appeal, Petitioner alleges, he

"realized that due to the exact same circumstance of him being unable to file a motion

for rehearing" in the appellate court, "[h]is federal habeas time [was] also being

[affected]," and he "realized it was essential" for him to file the habeas corpus petition.

*Id.*, pp. 2-3.

> Petitioner is unsure of the actual[] date, however Petitioner is sure that he
> file[d] his First Petition during the last week of Nov. or the first week of
> Dec. 2008.  Petitioner gave an Official at Florida State prison his Petition
> for writ of habeas corpus along with A special with draw form that he had
> filled out to have 5.00 sent to the clerk of the United States District Court
> for the filing fee.

On March 27th 2009 Petitioner received the Same manila envelope addressed to this Honorable court which contained The Petition "Stamped" [by] the officer as being received along with the Special withdraw form that also had the stamp on it, through institutional Mail. Petitioner thought his Petition had been mailed and was pending decision months ago.

On Monday March 30th 2009 Petitioner was unexpectedly transferred to Osceola County Jail, to be present for a V.O.P. [violation of probation] Hearing in that Circuit Court. Petitioner was advi[s]ed by the prison official not to take anything that did not [pertain] to that case in Osceola. Petition[er] was determine[d] to file His Petition for Writ of Habeas Corpus So Petitioner took a half finish[ed] Petition that He started during the weekend and his memorandum of law back to Osceola County Jail, so that He could file his Petition once again.

Petitioner asserts that he still has the stamped copy of the original Petition that he attempted to file last year.

Doc. 15, pp. 3-4.

Petitioner claims this original petition is with his personal property, which has not been sent to him from Florida State Prison. *Id.*, p. 4. He has been at the Central Florida Reception Center since May 21, 2009, but was advised that he will be returned to Florida State Prison so his property will not likely be sent to him. *Id.* "Due to this situation which is beyond [his] control Petitioner is unable to submit[] the stamped Petition." *Id.*

Finally,

Petitioner asserts in closing that no case that was cited in the Florida Law Weekly For the week of April 25th, 2008 was his case. The only Jackson vs State that came from the 1st DCA that week was Randolph Jackson. Which is the same case Petitioner was direct[ed] to see in this Honorable Court['s] order the other case is not A Jackson vs. State. But A. Johnson vs State 871 So.2d 880 (Fla. 1st DCA 2004).

To Petitioner's Knowledge His case has never been cited in the Fla. Law Weekly nor has it been published in the Florida Southern Second.

*Id.* (capitalization and punctuation in original).

The point of this is not clear. Petitioner wrote in his § 2254 petition that the appeal was denied on April 25, 2008, and this court found the West Reporter volume reference and appellate court case number which corresponded to the name and date provided. The 2004 case was Petitioner's direct appeal, not the Rule 3.850 appeal. Both were "table" citations, referenced in the Southern Reporter in a table captioned "Florida Decisions Without Published Opinions." The court looked to those documents only to determine dates or confirm dates provided by Petitioner as relevant to the one year limitations period, not to suggest the opinions were published or to suggest anything at all.

At the outset, the court can find no record of a § 2254 petition filed by this Petitioner (under his name or his alias, Chaires) in 2008, whether in this district or the Middle or Southern Districts of Florida (available on PACER). All of Petitioner's previous documents in this case reference the filing date of April 7, 2009, and not an earlier date.

Indeed, Petitioner filed another § 2254 petition with this court on June 10, 2009 (the date it was signed and delivered to prison officials for mailing). Doc. 1 in <u>Jackson v. McNeil</u>, 4:09cv217-RH/WCS. There, as to timeliness, Petitioner states:

> On March 30, 2009 Defendant was transferred from Florida State Prison.
> To the Osceola County Jail. For a violation of probation hearing. In the
> Ninth Judicial Circuit Court In and For Osceola County, Florida.
> Defendant was in the County Jail for (51) days waiting to go to the hearing
> and be brought back to D.O.C. The First District Court of Appeal denied
> Defendant[']s appeal on April 25th 2008 which made the conviction final.
> Had Defendant not been taken (transferred) back to Osceola County Jail
> (a different county from which Defendant was convicted) Defendant would
> have filed his, this Petition before April 25th of 2009. Defendant did file [a]

> Petition on April 7th 2009 (while in Osceola County Jail) however petition was not [accepted] / processed because Defendant was not able to pay the filing fee due to him not having access to his inmate account. It is Defendant[']s understanding that the (1) year limitation stop[ped] when he went to court.

Doc. 1 in that file, p. 14.[4]  He does not mention attempting to file a petition in November or December of 2008.

But assuming that Petitioner actually filed a petition in November of 2008, his time had already expired by then. His time expired on August 27, 2008. He knew by May 19, 2008, that the denial of his Rule 3.850 motion had been affirmed on April 25, 2008. He had a limited amount of time left, yet he claims he made a request through the inmate law library, "hoping" there was a written opinion on the appeal. He did not receive a response because shortly thereafter he was transferred, and in any event there was no written opinion.

Petitioner may have misunderstood the state court process, or the time limit for filing a § 2254 petition. But for equitable tolling to apply, Petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 and n. 8, 125 S.Ct. 1807, 1814 and n. 8, 161 L.Ed.2d 669 (2005) (citations omitted); Lawrence v. Florida, 549

---

[4] The petition in that case was submitted on a petition form used in another district, and requires an explanation by a prisoner "[i]f your judgment of conviction became final over one year ago," and sets forth the text of § 2244(d) in a footnote. Doc. 1 in that case, p. 14. The form used by prisoners in this district, used in this case (doc. 1), does not direct an explanation, so there is not a corresponding section here.

U.S. 327, 336, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007) (quoting Pace); Melson v. Allen, 548 F.3d 993, 1001 (11th Cir.2008) (quoting Lawrence).[5]

"Equitable tolling is an extraordinary remedy that must be applied sparingly. . . . A truly extreme case is required." Holland v. Florida, 539 F.3d 1334 (11th Cir. 2008), *pet. for cert. filed* May 13, 2009 (citations omitted); Melson, 548 F.3d at 1001 (quoting Holland). "Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel." Lawrence, 549 U.S. at 336-337, 127 S.Ct. at 1085-86 (also rejecting the argument there were "special circumstances" for appointed counsel) (citations omitted); Holland, 539 F.3d at 1339 (quoting Lawrence, collecting cases); Melson, 548 F.3d at 1001 (citing Lawrence and Holland).

According to Petitioner, he received a letter from his counsel on May 19, 2008, containing the date of the decision on appeal (April 25, 2008) and telling Petitioner there was nothing else the Public Defender's office could do on his case. Petitioner then put in a request for the Florida Law Weekly from the law library, "hoping" there was a written opinion on his appeal so that he could further appeal. Before this request was answered he was transferred on May 30, 2008. Petitioner did not have access to his legal property from May 30, 2008 (when he was transferred from Dade Correctional) until an unspecified time "several months later," when his property was sent to him at Florida State Prison. Petitioner apparently remained at Florida State Prison from the

---

[5] It has been assumed, but never decided, that the one year period is subject to equitable tolling. 548 F.3d at 1001 (citing Lawrence).

time of this transfer until he was "unexpectedly" transferred for the violation of probation hearing in Osceola County on March 30, 2009.

Petitioner claims he needed his legal property to pursue further review from the denial of his Rule 3.850 motion. There was no further review to be had, however. Petitioner had the benefit of appointed counsel[6] who told him the appeal was over. There is no alleged or apparent reason why Petitioner should have doubted this advice, and indeed it appears correct. The time for seeking rehearing in the appellate court had expired when the mandate was issued,[7] and the Florida Supreme Court lacks jurisdiction to review *per curiam* decisions. *See, e.g.*, Gandy v. State, 846 So.2d 1141, 1143-44 (Fla. 2003) (citations omitted); Foley v. State, 969 So.2d 283, 284-285 (Fla. 2007), *cert. denied*, 128 S.Ct. 2432 (2008) (citing Gandy, other citations omitted). The next step in the process, absent any federal claims which had to be exhausted by alternative state remedies, was to file a § 2254 petition.

Further, Petitioner received the letter from counsel on May 19 and was transferred on May 30, 2008. He was at Florida State Prison, and claims to have filed grievances to obtain his legal property, which he received several months after transfer, though it is not indicated if it was received before or after the time expired on August 27,

---

[6] It is noted that, except for prisoners sentenced to death, most prisoners do not have a court-appointed lawyer to pursue a Rule 3.850 motion or collateral appeal.

[7] A mandate issues after the time for filing a motion for rehearing has expired or a motion for rehearing is denied. *See* Fla.R.App.P. 9.330(a) (motion for rehearing to be filed within 15 days); 9.340(a) and (b) (mandate issues after the expiration of 15 days; a timely motion for rehearing extends the time for issuance of the mandate for 15 days after the order denying the motion). Here the judgment was affirmed on April 25, 2008, no motion for rehearing was filed, and the mandate issued some 18 days later, on May 13, 2008.

2008. Either way, Petitioner does not show that his lack of access to it was either an extraordinary circumstance or avoidable even with diligence. Petitioner does not allege that between receipt of counsel's letter and the expiration of time, he ever tried to obtain a copy of the opinion or any other document from his attorney or from the appellate court. Even without access to his paperwork or case number Petitioner could have obtained a mailing address for the court or the Public Defender's Office from the institution. Had he inquired, counsel or the court could have easily cleared up any "hope" of a written opinion or any further avenue of relief in the state appellate court. *Cf.* Holland, 539 F.3d at 1340 (failure of Florida Supreme Court to oversee appointed attorney was not an extraordinary circumstance, and petitioner presented no evidence that before his one year expired he asked the Florida Supreme Court to provide him directly with notice of its decision). This is not even a situation of erroneous advice by counsel, and even in that situation Petitioner would not be entitled to equitable tolling.[8]

      It seems possible that, until Petitioner received the order to show cause entered in this case, he was under the mistaken impression that his one year did not begin to

---

[8] Even gross negligence does not justify equitable tolling. *See* Holland, 539 F.3d at 1339. There the court distinguished Downs v. McNeil, 520 F.3d 1311 (11th Cir. 2008), a case where it was alleged that counsel affirmatively misled the petitioner about the filing of a document which would have tolled the one year period. 539 F.3d at 1339. Petitioner Holland had "made no allegation of knowing or reckless factual misrepresentation or of lawyer dishonesty," but limited his allegations to counsel's "failure to communicate with Petitioner on the status of his case and to [counsel's] failure to file a federal habeas petition timely, despite repeated instructions to do so." *Id.* But "no allegation of lawyer negligence or failure to meet a lawyer's standard of care – in the absence of an allegation and proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part – can rise to the level of egregious attorney misconduct that would entitle Petitioner to equitable tolling." *Id. See also* Melson, 548 F.3d at 1001 (quoting Holland) (also finding no egregious lawyer misconduct).

run until after the appellate court's decision of April 25, 2008, giving him until April 25, 2009, to timely file his § 2254 petition. But this mistaken belief by a pro se litigant is not an extraordinary circumstance which justifies equitable tolling, any more so than a miscalculation of counsel would be.

Finally, although Petitioner does not argue for a latter commencement date, the court considers whether the temporary lack of access to legal property as alleged here could be an unconstitutional impediment which prevented him from filing his petition earlier, thus triggering a later date under § 2244(d)(1)(B). Petitioner has not alleged or shown that his transfer for a violation proceeding, or the delay in forwarding legal property after his transfer, was unconstitutional or that it actually prevented him from filing a § 2254 petition. *See* Akins v. United States, 204 F.3d 1086, 1089-90 (11th Cir.), *cert. denied,* 531 U.S. 971 (2000) (finding no unconstitutional impediment due to inability to have access to the prison law library)[9]; Johnson v. Florida Dept. of Corrections, 513 F.3d 1328, 1331-32 and n. 8 (11th Cir.), *cert. denied,* 129 S.Ct. 348 (2008) (the State's objection to production of documents was not an unconstitutional impediment, petitioner never identified a document to which he did not ultimately gain access, how its lack prevented filing, and failed even "to mention precisely which documents he did receive, and the dates on which he received them."). Petitioner is not entitled to the benefit of a later commencement date for the one year period.

---

[9] In Akins the prisoner claimed that he was placed in lockdown, during which time he was unable to use the law library. As explained there, the prisoner had to show it actually "prevented him from exercising that fundamental right of access to the courts," and even assuming actual injury, he had the burden to show the lockdown was not "reasonably related to legitimate penological interests" for it to be unconstitutional. 204 F.3d at 1090, *citing* Lewis v. Casey, 518 U.S. 343, 351, 361, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (other citations omitted).

Accordingly, it is **RECOMMENDED** that this § 2254 petition, challenging

Petitioner's convictions and life sentences for armed robbery, imposed by the Second

Judicial Circuit, Leon County, case numbers 02-1404, 02-1504, 02,-1460, and 02-1573,

be **SUMMARILY DISMISSED** as untimely under § 2244(d).

    **IN CHAMBERS** at Tallahassee, Florida, on August 13, 2009.


         S/     William C. Sherrill, Jr.       

         **WILLIAM C. SHERRILL, JR.**

         **UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

    A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.